1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No.: 11-CV-03451-EJD |
| Plaintiff, | ) ) ) | **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |
| v. | ) ) | |
| JEFFREY ALAN LOWRANCE and FIRST CAPITAL SAVINGS & LOAN, LTD., | ) ) ) | |
| Defendants. | ) | |

The Securities and Exchange Commission ("SEC") moves for entry of default judgment against Defendants Jeffrey Alan Lowrance ("Lowrance") and First Capital Savings & Loan, Ltd. ("First Capital"). The SEC seeks injunctive relief, disgorgement of ill-gotten gains, and imposition of civil penalties stemming from Defendants' alleged violations of 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5. The Court took the SEC's motion under submission on December 6, 2011 without oral argument pursuant to Civil L.R. 7-1(b). For the reasons set forth below, the motion is granted.

/
/
/
/
/

# I. BACKGROUND

## A. Factual History

The SEC alleges the following facts:

Over the course of at least 23 months Lowrance induced 230 investors to invest approximately $21 million with First Capital for the stated purpose of trading foreign currencies. Compl. ¶ 10. Lowrance, through the First Capital website, knowingly made or authorized numerous false and misleading statements, including figures and charts, regarding the nature and profitability of investments with First Capital. Id. ¶¶ 11, 13, 15–17 & 19. For example, the website claimed that First Capital was a highly profitable company that used investor money to trade foreign currency and offered monthly returns of 4% to 7.15%. Id. ¶¶ 13 & 15. First Capital never engaged in the trades listed, and the few trades it did make were not profitable; therefore the statements, figures, and charts were false. Id. ¶ 21. Lowrance and First Capital e-mailed clients daily reports purporting to show the profitability of First Capital's trades to induce investment into First Capital. Id. ¶ 17. Neither Lowrance nor First Capital ever engaged in the trades detailed on the daily e-mails. Id. ¶¶ 17 & 21. Lowrance and First Capital wrote to their investors claiming to have a letter of credit guaranteeing the security of investments, but no such letter ever existed. Id. ¶ 19. Lowrance perpetrated a Ponzi scheme by using some investor money to pay other investors' purported returns, and he diverted other investor money to fund a start-up newspaper. Id. ¶¶ 1 & 22.

## B. Procedural History

The SEC filed this action on July 14, 2011, bringing claims of securities fraud against Lowrance and his company First Capital. ECF No. 1. After Defendants Lowrance and First Capital were served with process and failed to respond in a timely manner, ECF Nos. 6 & 7, Plaintiff moved for entry of default and served the motion by mail. ECF Nos. 8, 9, 13 & 14. The clerk entered default against Lowrance on August 16, 2011, ECF No. 10, and against First Capital on September 9, 2011. ECF No. 21. Plaintiff moved for default judgment on December 9, 2011, and provided proof of service indicating that a copy of the application for default judgment was mailed

2

1    to both Defendants. ECF No. 28. Defendants did not answer the complaint or respond to the

2    motions, and have never made an appearance in this action.

3

4                                        **II. DISCUSSION**

5        **A. Jurisdiction**

6            Courts have an affirmative duty to examine their own jurisdiction—both subject matter

7    jurisdiction and personal jurisdiction—when entry of judgment is sought against a party in default.

8    In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

9                **1. Subject Matter Jurisdiction**

10           The court has subject matter jurisdiction over this action because the complaint seeks relief

11   pursuant to causes of action authorized by 15 U.S.C. §§ 77t(d)(1) & 77v(a) and 15 U.S.C. §§

12   78u(d)(3), 78u(e), and 78aa. See 28 U.S.C. § 1331.

13               **2. Personal Jurisdiction**

14           Service of a summons in a federal action establishes personal jurisdiction over a defendant

15   who is subject to the jurisdiction of a court of general jurisdiction in the state where the district

16   court is located. Fed. R. Civ. P. 4(k)(1)(A). California permits its courts to exercise personal

17   jurisdiction to the maximum extent permitted under the U.S. Constitution. Cal. Civ. Proc. Code §

18   410.10. Plaintiffs bear the burden of establishing the court's personal jurisdiction over the

19   Defendants. See Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).

20           Personal jurisdiction over a defendant does not violate the due process protections of the

21   U.S. Constitution when (1) the defendant has purposefully directed his activities at residents of the

22   forum state, and (2) the litigation arises out of the defendant's forum-related contacts. Burger King

23   Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

24           Upon review of the certificates and affidavits of service, the court finds that Plaintiff

25   effected service of process in conformity with Fed R. Civ. P. 4(c) and 4(e)(1) and Cal. Civ. Proc.

26   Code § 415.20(b). See ECF No. 7. Plaintiff alleges that Defendants solicited approximately $21

27   million from hundreds of investors, including investors in California. Compl. ¶ 28. The means of

28   solicitation included the First Capital website, cold calls, and mass mailings. Id. ¶ 11. The

                                              3
Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1    solicitations constitute purposeful direction, and the litigation arises out of that conduct.

2    Accordingly, the court may exercise personal jurisdiction over the Defendants in this case.

3        **B. Default Judgment**

4        Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment

5    against a defendant who has failed to plead or otherwise defend an action. "The district court's

6    decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d

7    1089, 1092 (9th Cir. 1980). The Ninth Circuit has provided seven factors for consideration by the

8    district court in exercising its discretion to enter default judgment: (1) the possibility of prejudice to

9    the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint;

10   (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts;

11   (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal

12   Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–

13   72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken

14   as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915,

15   917–18 (9th Cir. 1987). "In applying the discretionary standard [from Eitel], default judgments are

16   more often granted than denied." PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D.Cal.

17   1999).

18       As set forth below, the Court finds that the Eitel factors favor entry of default judgment.

19           **1. Prejudice to the Plaintiff**

20       Plaintiff will be prejudiced if default judgment is not entered. Because Defendants have

21   elected not to take part in the litigation, the SEC will be unable to fulfil its mandate to enforce the

22   securities laws and to obtain injunctive relief if default judgment is not granted.

23           **2. Merits of the Substantive Claim and Sufficiency of the Complaint**

24       Plaintiff has made a compelling showing that Defendants violated 15 U.S.C. § 77e(a),

25   77e(c), and 77q(a), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5.

26           **a. Defendants Sold Securities**

27       Defendants collected money from investors for a foreign currency exchange program by

28   telling investors that expert traders would earn significant profits on their behalf. Id. ¶¶ 10, 13 &

4

15. These actions constituted an investment contract, which is a security pursuant to Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. 15 U.S.C. § 77b; 15 U.S.C § 78c; see SEC v. W.J. Howey Co., 328 U.S. 293 (1946).

### b. Material Misrepresentations and Omissions

Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it unlawful to make untrue statements of material fact, omit material facts, use any device, scheme or artifice to defraud, or engage in any act, practice or course of business which does or could operate as a fraud or deceit upon any person in connection with a purchase or sale, or in the offer or sale of, any securities. 15 U.S.C. §§ 77q(a)(1), 78j(b); 17 C.F.R. § 240.10b-5(b). A fact is material if it would have assumed actual significance in the deliberations of a reasonable investor. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976).

Defendants made numerous untrue statements of material fact and employed a scheme that operated as a fraud or deceit upon the investors. Defendants represented that their trading activity earned high annual returns—up to 18.7%—despite knowing that no profitable trades were ever made. Compl. ¶¶ 13 & 15. The First Capital website contained a chart and spreadsheet showing profitable trades that had never in fact occurred. Id. ¶ 16. Defendants provided daily e-mails to investors touting the profitability of the trades Defendants were supposedly making. Id. ¶ 17. In February 2009, Defendants admitted that these trades never occurred, but rather were only recommended trades. Id. ¶ 22; Yun Decl. Ex. 2 at 24, 28, ECF No. 25. In June 2008, Defendants stopped paying investors dividends but continued to solicit new clients. Compl. ¶¶ 20 & 23. Lowrance did not inform the new investors that Defendants were not making dividend payments to other investors or that Defendants were not profitable. Id. ¶ 23. Defendants failed to disclose that investor money was not being used for trading but instead to compensate Lowrance and finance his start-up newspaper. Id. ¶ 1. Finally, Lowrance failed to disclose that he was prohibited by the State of California from selling foreign currency contracts. Id. ¶ 8. The complaint and accompanying declarations make a strong showing of Defendants' violations of Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act.

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

### c. Engagement in a Fraudulent Scheme

Offering a security for sale with the intent to misappropriate the proceeds is a fraudulent scheme and violates Section 10b-5 of the Exchange Act. SEC v. Zandford, 535 U.S. 813, 819–820 (2002). Acts with the primary purpose of creating a false appearance of fact in furtherance of the scheme violate Rules 10b-5(a) and (c). Simpson v. AOL Time Warner, 452 F.3d 1040, 1048 (9th Cir. 2006) (Simpson I), vacated on other grounds, Simpson v. Homestore.com, Inc., 519 F.3d 1041 (9th Cir. 2008).

Defendants engaged in a fraudulent scheme, conduct that is itself deceptive, violating Exchange Act Rules 10b-5(a) and (c). 17 C.F.R. §§ 240.10b-5(a), (c). Defendants transferred investor funds to off-shore accounts and then used those funds to pay other investors and fund his start-up newspaper. Compl. ¶¶ 1 & 22. The intent of these payments to investors was to mislead them and create the illusion that First Capital was profitable and encourage further investment. Id. ¶ 18. Defendants issued false "dividends" to early investors to induce further investment while knowing the additional capital would never be invested. Taken together, this conduct constitutes a fraudulent scheme that violates Rules 10b-5(a) and (c). See Simpson I, 452 F.3d at 1048.

### d. Unregistered Offers and Sales of Securities

Sections 5(a) and 5(c) of the Securities Act prohibit offering for sale or actual sale of a security through interstate commerce unless a registration statement has been filed or is in effect as to that security. 15 U.S.C. §§ 77e(a), (c). The SEC can establish a prima facie violation of Section 5 by showing that no registration statement was in effect, that the defendant sold or offered for sale the securities, and that there was use of interstate transportation, communication, or the mails in connection with the sale or offer for sale. SEC v. Cavanagh, 1 F. Supp. 2d 337, 361 (S.D.N.Y.), aff'd, 155 F.3d 129 (2d Cir. 1998).

Defendants did not have a registration statement in effect for the securities they sold or offered for sale. Compl. ¶ 4. From April 2007 through February 2009, Defendants solicited and acquired approximately $21 million from hundreds of investors in multiple states, including California, through their website, cold-calls, and mass mailings. Id. ¶¶ 10 & 11. Taken as true, these allegations establish a prima facie violation of Sections 5(a) and (c) of the Securities Act.

6

United States District Court
For the Northern District of California

1    Once the prima facie violation is established, the burden of proof to show that the offers

2 and sales were exempt from registration shifts to the Defendants. See SEC v. Platform Wireless

3 Int'l Corp., 617 F.3d 1072, 1086 (9th Cir. 2010). Section 3(a)(11) of the Securities Act exempts

4 securities sold or offered for sale solely within one state or territory. 15 U.S.C. § 77c(a)(11).

5 Section 4(a)(2) of the Securities Act exempts those sales or offers for sale that did not involve a

6 public offering. 15 U.S.C. § 77d(a)(2). Rules 504 and 505 of Regulation D exempt offerings less

7 than $1 million and $5 million, respectively. 17 C.F.R. §§ 230.504(b)(2), 505(b)(2)(i). Finally,

8 Rules 505 and 506 exempt sales or offers of sale to less than 35 people who have knowledge and

9 experience in financial and business matters. 17 C.F.R. §§ 230.505(b)(2)(ii), 506(b)(2)(ii).

10   None of the exemptions apply in this case. Defendants had investors from multiple states

11 and even overseas. Compl. ¶ 10. Defendants engaged in a public offering by soliciting unknown

12 investors through various mediums including the internet, phone calls, and mass mailings. Id. ¶¶

13 11-12. Defendants raised approximately $21 million dollars over 22 months from hundreds of

14 investors. Id. ¶ 10.

15   Accordingly, Defendants' sales and offers for sale were not exempt from registration and

16 violated Sections 5(a) and (c) of the Securities Act.

17                      **3. Sum of Money at Stake**

18   An entry of default judgment may not be appropriate where a large sum of money is at

19 stake. Eitel, 782 F.2d at 1472. When determining whether or not to impose penalties the court can

20 consider several factors including "(1) the egregiousness of the defendant's conduct; (2) the degree

21 of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the

22 risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or

23 recurrent; and (5) whether the penalty should be reduced due to the defendant's current and future

24 financial condition." SEC v. Opulentica, LLC, 476 F. Supp. 2d 319, 331 (S.D.N.Y. 2007).

25   The state of California sanctioned Lowrance for similar activities in 2006. Compl. ¶ 8.

26 These sanctions demonstrate both Lowrance's knowledge of the unlawfulness of the scheme and

27 the recurrence of the violations. Lowrance and First Capital caused a great deal of harm—millions

28

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

of dollars in losses for numerous investors. The significant amount of the penalties sought in this case does not outweigh the other factors set forth in Eitel.

### 4. Concern of Dispute of Material Fact and Excusable Neglect

Defendants were properly served with the complaint but have not presented a defense or otherwise communicated with the court. There is no indication that the Defendants' failure to appear in this action is due to excusable neglect.

Additionally, in February 2009 Lowrance wrote a letter to some of his investors in which he admitted that First Capital was never profitable. Compl. ¶ 21. He also admitted in the same letter that the e-mails detailing daily trades were fabricated, that he had mismanaged and lost almost all of his investor's money, and that he used his investor money to pay purported returns and fund his newspaper. Id. ¶¶ 21 & 22. Accordingly, there is no indication that the material facts are subject to dispute.

### 5. Public Policy Concern

Finally, although strong public policy favors decisions on the merits, Defendants' choice not to appear in the action suggests that litigation of the merits will not be possible in this case. In sum, the court finds that the Eitel factors collectively favor entry of default judgment. The Court therefore GRANTS Plaintiff's motion for entry of default judgment.

### C. Scope of Relief

After determining that entry of default is warranted, the court must determine the terms of judgment.

### 1. Injunctive Relief

Plaintiff requests that the Defendants be enjoined against future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act.

By statute, the Court has the authority to grant the injunctive relief sought. 15 U.S.C §§ 77t(b), 78u(d), (e). To obtain that relief, Plaintiff must show a reasonable likelihood of future securities law violations. See SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). To determine the likelihood of future violations the court must evaluate the totality of the circumstances including past violations. Id. The court may also consider the degree of scienter involved in the violations,

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    the isolated or recurrent nature of the violations, and the likelihood, due to Defendant's occupation,

2    that future violations may occur. Id.

3           Lowrance was previously sanctioned for his trading activities by the State of California and

4    is prohibited from selling commodities there. Compl. ¶ 8. Lowrance established First Capital and

5    continued trading for almost two years after that administrative order was issued. Id. ¶ 1. The

6    totality of the circumstances of the alleged violations reveals a significant likelihood that

7    Defendant will continue this activity; an injunction against further violations is therefore proper.

8                          **2. Disgorgement of Ill-Gotten Gains**

9           The Court has broad powers in equity to order the disgorgement of funds obtained through

10    violations of the securities laws. SEC v. First Pacific Bancorp, 142 F.3d 1186, 1191 (9th Cir.

11    1998). The SEC need only show a reasonable approximation of the profits connected to the

12    violations to determine the disgorgement amount. Id. at 1192 n.6. Once the SEC establishes a

13    reasonable approximation of the disgorgement amount the burden of proof shifts to the Defendants.

14    SEC v. First City Fin. Corp., 890 F.2d 1215, 1232 (D.C. Cir. 1989). Unlike factual allegations, the

15    allegations relating to the amount of damages suffered are not ordinarily accepted as true upon

16    default judgement. Televideo, 826 F.2d at 917–18.

17           The SEC alleges in its complaint that Defendants defrauded investors of $21,000,000.

18    Compl. ¶ 10. Plaintiff offers no evidence to substantiate this amount. In Lowrance's letter to

19    investors, however, Lowrance states that he lost $26,000,000 of investor funds. Yun Decl. Ex. 2 at

20    10, ECF No. 25. Plaintiff offers no evidence or explanation for the difference between the two

21    figures.

22           Even if $21 million is the SEC's conservative estimate, it must still proffer some basis for

23    its approximation. Bank statements, depositions, and other written records are more appropriate

24    types of documentation to establish a reasonable approximation of ill-gotten gains. Compare SEC

25    v. Earthly Minerals Solutions, Inc., 2:07-CV-1057 JCM LRL, 2011 WL 1103349 (D. Nev. 2011)

26    (utilized depositions and records to determine disgorgement amount); SEC v. Souza, CIV S-09-

27    2421 KJM, 2011 WL 2181365 (E.D. Cal. 2011) (created a table of amounts invested and returned

28    to investors).

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    If Plaintiff can show a reasonable approximation of ill-gotten gains, adding pre-judgment

2    interest to the principal will be appropriate. <u>SEC v. Cross Financial Services, Inc.</u>, 908 F. Supp.

3    718, 734 (C.D. Cal. 1995). Interest should be calculated pursuant to 28 U.S.C. § 1961. <u>SEC v.</u>

4    <u>Platform Wireless Intern. Corp.</u>, 617 F.3d 1072, 1099–1100 (9th Cir. 2011).

5    ### 3. Statutory Penalties Pursuant to 15 U.S.C. § 17t(d)(2)(C)

6    Congress has prescribed three tiers of penalties for violations of domestic securities

7    regulations. 15 U.S.C. § 77t(d)(2). The highest tier is reserved for violations that (1) involve fraud,

8    deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and (2) either

9    directly or indirectly resulted in or created substantial risk of substantial loss. In this third tier, the

10   court may impose penalties of up to $150,000 per violation for a natural person, and up to

11   $725,000 per violation for any other person. 17 C.F.R. 201.1004 (2009); 17 C.F.R. 201, Subpt. E,

12   Tbl. IV. Each client defrauded by Lowrance and First Capital is a separate violation of 15 U.S.C.

13   §§ 77e(a), 77e(c), and 77q(a). The motion for default judgment alleges Lowrance and First Capital

14   had 230 clients; therefore the maximum allowable penalty is $150,000 × 230 = $34,500,000 for

15   Lowrance (a natural person), and $725,000 × 230 = $166,750,000 for First Capital.

16   Because of the magnitude of the fraud, the clear showing that Lowrance knew of the

17   wrongful nature of his behavior, and the egregiousness of Defendants' conduct, the court finds that

18   the maximum penalties are warranted in this case.

19   ### 4. Ancillary Relief

20   The Court has the equitable authority to order an accounting to identify assets when dealing

21   with overseas defendants. <u>SEC v. Int'l Swiss Inv. Corp.</u>, 895 F.2d 1272, 1276 (9th Cir. 1990).

22   Lowrance had his investors transfer their money to Maryland where he had the funds converted to

23   Euros and transferred to a bank in the Netherlands. Compl. ¶ 14. Lowrance has admitted to having

24   a bank account in Peru as well. Yun Decl. Ex. 2 at 23, ECF No. 25. It is entirely possible that

25   Lowrance and First Capital have other unknown overseas accounts which they used to hide the

26   proceeds of their unlawful scheme. It is both reasonable and within this Court's authority to require

27   an accounting of all overseas funds to assist with the disgorgement and collection of penalties. The

28   judgment will order an accounting.

10

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Plaintiff's motion for default judgment is GRANTED. Within 14 days of the date of this Order, the SEC shall submit the basis for a reasonable approximation of the disgorgement amount requested, or explain why no further showing is required. Final judgment will be entered soon after that deadline. The judgment will incorporate the disgorgement request only if a sufficient basis for the amount has been demonstrated.

**IT IS SO ORDERED.**

Dated: July 5, 2012

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-CV-03451-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT